## RICHARDS v. ERNST WIENER CO.

(Supreme Court, Appellate Division, First Department. June 2, 1911.)

1. CORPORATIONS (§ 376*)—POWERS—PURCHASE OF STOCK.

Under Penal Law (Consol. Laws 1909, c. 40) § 664 (formerly Pen. Code, § 594), making it a misdemeanor for a director of a stock corporation to concur in any act or vote intended to apply any funds of the corporation, except surplus profits, to the purchase of shares of its own stock, where a corporation sold stock to be paid for in installments, in consideration of which the corporation agreed to employ the buyer, provided that, if he failed to pay the second installment, he might be discharged, in which

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

case the corporation would repurchase the stock, the condition will be read into the contract, in support of its validity, that the corporation would repurchase the stock in the event named if there were then surplus profits on hand.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1530; Dec. Dig. § 376.*]

**2. CONTRACTS (§ 141*)—LEGALITY—PRESUMPTIONS.**

Since the law will not presume that a person intends to do an illegal act, it will not presume that the parties intended to make an illegal contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1760; Dec. Dig. § 141.*]

**3. CORPORATIONS (§ 389*)—ACTIONS—BURDEN OF PROOF.**

In an action against a corporation on its contract to repurchase stock, the burden is on the corporation to show that it would be illegal for it to repurchase the stock by reason of the want of any surplus profits on hand.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 389.*]

Ingraham, P. J., and McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by James N. Richards against the Ernst Wiener Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

J. Woolsey Shepard, for appellant.

Nathan D. Stern, for respondent.

SCOTT, J. Defendant appeals from a judgment and order denying a motion for a new trial in an action for damages for nonfulfillment of a contract. In October, 1908, plaintiff and defendant entered into a contract to the following effect: Plaintiff subscribed for 100 shares of defendant's preferred stock at the price of $10,000, of which he agreed to pay $3,000 immediately, not less than $5,000 within six months, and the balance within nine months. In consideration of this subscription, defendant agreed to employ plaintiff in its business, and to pay him a certain salary and commissions. If the plaintiff should fail to pay the second installment, the defendant reserved the option to discharge him, "and, if in this case you should not want to have the first installment paid by you considered as the purchase price in full for 30 shares of our preferred stock, then we shall repurchase these 30 shares of stock from you at par within six months thereafter." It was further provided that if at any time during the first six months, or at the end thereof, plaintiff should discontinue his services of his own account, and fail to pay the $5,000, "then the first installment of $3,000 paid in by you shall be considered as the purchase price in full for 30 shares of our preferred stock without any obligation on our part to repurchase them." Plaintiff did not pay in the second installment of $5,000, and his services were discontinued on August 14, 1908, whether by his act or that of defendant being in dispute, and plaintiff now seeks to recover back the $3,000 he has paid, offering to return the 30 shares of stock.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The first defense is that plaintiff discharged himself. Upon this question the jury found in his favor upon conflicting evidence. The weight of the evidence accords with the verdict, and it thereby established that plaintiff was discharged by defendant on August 14, 1908. According to the terms of the contract, if it is enforceable, plaintiff thereby became entitled at his option, which he exercised, to a return of the $3,000 paid by him, or, as the contract has it, to the "repurchase" of the 30 shares of stock.

[1] The second defense, and the one which presents a serious question, is based upon section 664 of the penal law (formerly section 594 of the Penal Code), which reads as follows:

"A director of a stock corporation who concurs in any vote or act of the directors of such corporation or any of them, by which it is intended ; * * * (5) To apply any portion of the funds of such corporation, except surplus profits, directly or indirectly to the purchase of shares of its own stock, is guilty of a misdemeanor."

The argument, of course is that a contract which calls upon a party to perform an illegal act is itself illegal and void, and cannot be enforced. There is no fault to be found with this rule; the only question being whether it applies to the present case. It will be observed that the statute does not forbid a corporation to purchase its own stock, nor does it forbid it to enter into a contract to do so. What it does forbid is the consummation of such a contract by making the purchase otherwise than out of surplus. It was therefore perfectly legal and competent for the defendant to agree to repurchase the stock from plaintiff, provided, and this is a proviso which the statute reads into the contract, that said defendant should have when the time came a surplus out of which the purchase could lawfully be made.

[2] The law will not presume, unless forced to do so, that a person intends to do an illegal act. It will not therefore presume that the parties intended to make an illegal contract. The contract itself therefore was perfectly legal subject to certain limitations upon its enforceability. If when the time came defendant had a sufficient surplus, the contract could be enforced. If it had not, the contract could not be enforced.

[3] In defending against plaintiff's attempt to enforce it, the burden rested upon defendant to show that it would be illegal to do so, for there is no presumption one way or the other as to the existence of a surplus. The defendant assumed this burden, but failed in sustaining it, for it was unable to show by competent evidence that it has no surplus. Under these circumstances, I think that plaintiff was entitled to recover.

The judgment and order appealed from should therefore be affirmed, with costs.

LAUGHLIN and SCOTT, JJ., concur.

INGRAHAM, P. J. I do not concur in the affirmance of this judgment.

The plaintiff undertook to subscribe for 100 shares of the 6 per cent. stock of the defendant, a domestic corporation, and finally made an

agreement with the secretary of the corporation which was contained in a letter dated October 24, 1908, by which the agreement that had been made between the plaintiff and the corporation was stated as follows: Plaintiff was to subscribe for 100 shares of the 6 per cent. preferred stock par value $100 at the price of $10,000. Plaintiff agreed to pay not less than $3,000 immediately, $1,000 at the time of signing the contract, and $2,000 on or before November 10, 1908, not less than $5,000 within six months from date, and the balance within three months thereafter; i. e. nine months from date. In consideration of this subscription, the defendant agreed to employ plaintiff in defendant's business at a salary of $50 per week and a commission on all new business that plaintiff brought to the corporation. If, however, plaintiff should fail to pay the second installment of $5,000, the corporation to have the option to discontinue plaintiff's employment, "and, if in this case you should not want to have the first installment paid by you considered as the purchase price in full for 30 shares of our preferred stock, then we [defendant] shall repurchase these 30 shares of stock from you at par within 6 months thereafter." This condition, according to the facts as found by the jury, having happened, plaintiff tendered the 30 shares of stock to the defendant, and demanded the $3,000 therefor, which was refused, and this action was brought to recover that amount. The main question presented on this appeal is whether this was a contract which the defendant had power to make, or whether it was prohibited by law, and therefore invalid.

In discussing this question, it must be noted that the contract is absolute, and, if sustainable, it bound the defendant to pay not out of surplus earnings, but absolutely out of any property belonging to the corporation which could be reached by execution upon a judgment being obtained. So that a corporation although having capital stock subscribed and paid for might by a contract of this kind render the whole subscription nugatory, and impose upon the corporation a liability to those who had subscribed for the capital stock for the amount that they had subscribed, thus leaving the corporation without funds to carry on its ordinary operations or to secure its creditors.

A subscription to the capital stock of a corporation is regulated by article 4 of the stock corporation law. Chapter 61 of the Laws of 1909 (chapter 59, Consol. Laws 1909). Section 53 of that act provides that, if the whole capital stock shall not have been subscribed at the time of filing the certificate of incorporation, the directors named in the certificate may open books of subscription to fill up the capital stock; that at the time of subscribing every subscriber whose subscription is payable in money shall pay to the directors 10 per centum upon the amount subscribed by him in cash, and no such subscription shall be received or taken without such payment. This provision apparently contemplates an absolute subscription upon which 10 per cent. of the amount subscribed must be paid by the subscriber in cash and no such subscription could be received or taken without such payment. Section 54 provides for the payment of the subscription, and for a forfeiture for the use of the corporation in case default should be made in the payment of any installment as required by a resolu-

tion of the board of directors, with a further provision that the stock, if forfeited, may be reissued, or subscriptions therefor may be received as in the case of stock not issued or subscribed for. If such stock, however, be not sold for its par value or subscribed for within six months after such forfeiture, it shall be canceled and deducted from the amount of the capital stock, and, if by such cancellation the amount of the capital stock is reduced below the minimum required by law, the capital stock shall be increased to the required amount within three months thereafter, or the business of the corporation may be closed, as in the case of an insolvent corporation. Section 55 provides that no corporation shall issue either stock or bonds except for money, labor done, or property actually received for the use and lawful purposes of such corporation. Section 56 provides that every holder of capital stock not fully paid shall be personally liable to its creditors to an amount equal to the amount unpaid on the stock .held by him for debts of the corporation contracted while such stock was held by him.

By these provisions regulating the subscription to the stock of a corporation, it was intended that a fund should be provided to enable the corporation to transact its business and to secure the payment of its debts. No subscription could be received until 10 per cent. of the stock subscribed for was paid in at the time of making the subscription, and that payment must be one absolutely for the benefit of the corporation. The remaining amount of the subscription must be paid in within the time fixed by the board of directors, and, in the event that the installments were not paid by the subscribers, the stock was to be forfeited for the benefit of the corporation; and such stock so forfeited must be sold or subscribed for within six months after the forfeiture, or the stock should be canceled, and the amount of the capital stock reduced by the amount of the canceled stock. If by cancellation of stock the capital stock of the corporation was reduced below the minimum required by law, the capital stock must be increased to such a minimum amount within three months thereafter, or the corporation may be wound up as an insolvent corporation. These careful provisions seem to me to be entirely inconsistent with a subscription upon any other terms than that prescribed by the statute, and a contract for such subscription upon other terms than that prescribed or a conditional subscription by which not only the subscription itself should be canceled, but the subscriber, after he had failed to pay the additional installment, should have a cause of action against the corporation for the amount that he had paid upon his uncompleted subscription would be a violation of the statute.

By the contract here sought to be enforced, the plaintiff subscribed for 100 shares of stock of the par value of $10,000, and paid therefor the sum of 10 per cent. of the amount. It was a cash subscription and the only valid subscription that the company could receive was one by which the subscriber was to pay for the stock its par value in cash, but at the same time the corporation made a contract by which at the option of the subscriber, after the payment of $3,000, the company would buy back from him the stock for which he had subscribed,

and pay therefor the amount that the plaintiff had subscribed for it, a contract which it seems to me violates the express provisions of the statute regulating such subscriptions, and which, if such a contract was authorized, would made the subscription to the stock of the corporation a sham and fraud upon the other stockholders and the creditors of the corporation.

And in addition, by section 664 of the penal law, it is made a misdemeanor for a director of a stock corporation to concur in any vote or act of the directors of such corporation or any of them by which it is intended to apply any portion of the funds of such corporation except surplus profits directly or indirectly to the purchase of shares of its own stock. This provision, it seems to me, clearly emphasizes the intention of the Legislature to prevent any such contract as that here attempted by which a corporation should purchase from a subscriber to its stock the stock so subscribed for, unless the corporation should have net earnings which could be applied to that purpose. Reading these provisions of the statute together, it seems to me that any such arrangement as was attempted to be made in this case was one expressly prohibited by the laws of the state, and one that could not be enforced.

It is said in the prevailing opinion that the burden was on the defendant to show that it had no net earnings applicable to the payment to the plaintiff of the amount which he had subscribed for the stock. But this contract in terms provides that the corporation shall purchase the 30 shares of stock for which the $3,000 was to be considered as the full purchase price. There was no restriction as to the source from which the funds required for this repurchase of the plaintiff's stock was to be provided, but it became an absolute contract of the corporation to pay to the plaintiff the $3,000 that he had subscribed for the 30 shares of stock or the $3,000 which he had paid upon the subscription to the 100 shares of stock. It was illegal for the directors to make any contract by which an absolute obligation was imposed upon the corporation which was not to be satisfied from surplus earnings. Thus, although the corporation may have had surplus earnings, if, at the time the payment contemplated by the contract came to be complied with there were no surplus earnings from which the amount could be paid, undoubtedly the directors would be guilty of a misdemeanor under the provision of the penal law. And so it seems to me that a contract made under which there was a legal liability of the company to pay a sum of money for the purpose of purchasing its own stock, not out of surplus earnings but generally out of its property, would be a contract within the prohibition contained in these provisions of law, as the only contract which the directors could make which would not make them guilty of a misdemeanor was a contract to pay for the stock out of surplus earnings. Reading all these provisions of the statute together, it seems to me that this was a contract that the corporation had no power to make, and one that could not be enforced. If, however, the burden was on the defendant to establish the fact that neither at the time the contract was made nor at the time it was to be performed there were not earnings from which this pay-

ment could be made, I think there was evidence which the court excluded which was competent to show that there were no net earnings. An officer of the company was called who testified that he had knowledge of all the business affairs of the corporation, had knowledge of its resources and liabilities, and was asked whether there were net earnings of the company in existence at the time the contract was made or at the time it was to be performed. On objection of the plaintiff he was not allowed to answer those questions and to that the defendant excepted.

I do not think, therefore, the judgment can stand, and it should be reversed.

McLAUGHLIN, J., concurs.