### HUGHES v. EDDY VALVE CO.

(Supreme Court, Appellate Division, Third Department. November 15, 1911.)

1. MASTER AND SERVANT (§ 70*)—IMPLIED CONTRACTS—COMPENSATION FOR SERVICES.

Where an employé had a contract beginning January 1, 1891, to render services for a weekly salary with a deduction for lost time, and also to pay him $200 in quarterly payments of $50 each, and in December, 1893, without dissent on his part, the payment of $200 was discontinued, and in July, 1894, he agreed to accept $50 at the end of the year in lieu of the lost time deducted, which amount was paid until January, 1908, when it was discontinued without dissent, and he remained in the employment receiving only his weekly wages thereafter until September 1910, there was an implied contract between the parties that the $200 should be no longer paid, and there can be no recovery therefor.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 70.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. LIMITATION OF ACTIONS (§ 195*)—PART PAYMENT—BURDEN OF PROOF.

To make a payment a part payment within the statute of limitations, the burden is upon the creditor to show that it was a payment of a portion of the admitted debt, and that it was paid to him as such, under circumstances amounting to an acknowledgment by the debtor of more being due, from which a promise might be inferred to pay the remainder.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 711–716; Dec. Dig. § 195.*]

3. LIMITATION OF ACTIONS (§ 197*)—WEIGHT OF EVIDENCE—PART PAYMENT.

Evidence, in an action for the recovery of money alleged to be due under a contract of employment, held insufficient to show that the employer in making a regular payment to the employé was making it in part payment of a larger sum formerly paid, so as to take the debt from under the statute of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Dec. Dig. § 197.*]

Betts, J., dissenting.

Appeal from Trial Term, Saratoga County.

Action by Robert Hughes against the Eddy Valve Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, SEWELL, BETTS, and HOUGHTON, JJ.

Edgar T. Brackett, for appellant.

John Scanlon, for respondent.

JOHN M. KELLOGG, J. This judgment is wrong upon the law and the facts. In December, 1890, the plaintiff made a contract with the defendant whereby he was to remain in its employment on the following terms: Commencing January 1, 1891, the company to pay $25 per week for 59 hours' labor; all lost time to be deducted at that rate and 50 cents per hour for actual overtime allowed. It was also to pay the sum of $200, payable in quarterly payments of $50 each in advance. He continued to work, and in December, 1893, he was told that the company could not pay him any longer the $200 per year, but would continue the other payments and allow him 10 days' vacation at the expense of the company. He made no dissent.

In July, 1894, his attention was called to the fact that the bookkeeper was charging his lost time against him, and he was asked his pleasure with reference to it. He said he had rather have the lost time deducted and the equivalent given to him at the end of the year. It was understood that $50 was to be allowed. Thereafter it gave him and he accepted $50 at the end of the year, about Christmas time. This was paid annually until January, 1908, when he was informed that the company could not afford to pay him the $50 a year longer. He was then about 69 years old. He made no dissent. There is no substantial dispute about this last conversation, which plaintiff concedes was in January, 1908. He remained in the company's employ without any dissent, receiving only the weekly wages thereafter until September, 1910, when he quit the employment and brought this action and by the judgment has recovered the $200 a year for about 17

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

years, less $50 per year deducted as payments thereon from January 1, 1903, to January, 1908.

There is no substantial dispute about the facts. Any dispute is merely a verbal one; but the main facts: That he was informed in 1893 that the $200 would not be paid longer, that he remained thereafter without dissent; that in 1894, when it was discovered that his lost time was being charged to him, it was agreed that $50 was to be paid in lieu thereof at the end of each year; that settlements were thereafter made pursuant thereto; that in 1908 he was told that the $50 would not be paid any longer; and that he continued at work without objection—are entirely undisputed. He says that, when he was told the company did not want to pay the $200 any longer, his answer was, "I will see about it," and, when asked why he continued to make settlements from year to year with the $200 deducted, he says:

"I understood that they did not want to pay it.  Q. And wasn't going to? A. Well, sir; that was another question whether he would.  No, sir;  I did not understand that he was not going to pay it any more, that he didn't want to pay.  He didn't pay it to me any more.  From that time until the time I quit in 1910, or about that time, I never made any further claim for the $200 at all.  I just went on receiving the weekly pay, getting about holiday time $50 a year.  *  *  *  During the 18 or 19 or 20 years prior to the time of my employment ceasing, I didn't make claim for this $150 a year and collect it because I had every confidence in the Eddy Valve Company that they were in good standing, and that my money was safe, more so perhaps than in many of the banks.  It was in good standing.  And I thought if I made any claim that it would conflict and perhaps be the cause of my leaving, and I was not circumstanced to leave.  *  *  *  I have no reason for not finding out what they understood about it, only every confidence in the company.  I didn't find out what they understood, because I didn't want any misunderstanding.  *  *  *  I preferred to stay, even if they did not understand that they were owing me anything for the $200 a year.  I had it in mind that if I said they were not paying me the balance of $150 a year, and that they owed me the balance of $150 a year, that they would not keep me, perhaps that they would—from what Mr. Thomas Knickerbocker said, that that was more than they were willing to pay, and therefore I kept still about it.  I said to Mr. John Knickerbocker when he came home that Mr. Rogers had, when he paid me the last installment, said that his father, Mr. Thomas Knickerbocker, wanted to discontinue the $200, and he made the reply, 'I suppose, Mr. Hughes, you don't like that,' and I says, 'No, sir, and I don't intend to like it,' and he said, 'I will see,' and that was all he said."

These are the only suggestions which the plaintiff can urge in his favor; but they are not sufficient to change the fact that he was informed that the defendant was not willing to pay the $200 a year, that he made no dissent and apparently acquiesced, as he says, in order to have no misunderstanding and not to lose his job. Of course he did not like it, but he was called upon to dissent or assent, and his subsequent conduct shows clearly that he assented. While he did not in words say that he would submit to the reduction, he knew it was required, and he assented to it by continuing in the employ and accepting payment on another basis. There were at least two subsequent modifications of the contract with his assent. The company kept a memorandum of the conversation with reference to the $200; he is relying upon mere memory. At the time the $200 was deducted, there was a financial depression, and business was bad. At

the time the $50 was deducted, he was getting to be a very old man for active employment, and undoubtedly the deduction was not unreasonable. He did not intimate at the time that it was unjust. There is no possible warrant for deducting the $50 paid during the several years from the $200. If the plaintiff's version is right, he was entitled to it in addition to the $200. The effect of his evidence fairly means that instead of reducing his pay $200 it was increased: (1) By making no allowance for lost time; (2) by paying him $50 additional each year. There is no pretense that either party contemplated that the result of the defendant's seeking to reduce the plaintiff's pay $200 was that it was understood that it was to be increased. There was no suggestion by anybody that he credit the $50 as a payment on the $200. At the time of bringing suit he evidently resorted to that as a makeshift for appearance sake.

[1] I think, therefore, upon the law and the facts the $200 was deducted pursuant to the agreement of the parties, and that there can be no recovery therefor.

But, if I am not right, the fact remains that the defendant during all the time stood in the attitude of being unwilling to pay the $200. The $50 per year was not intended as a part payment of the $200. It was as a present and to make up for lost time charged.

[2] When it is claimed that the $50 is a part payment of the $200 and takes the remainder from the statute of limitations, it is immaterial what the plaintiff's intent was in receiving it. The real question is: What was the defendant's intent in paying it. Was it paid as a part of the $200 under circumstances indicating that there was a balance unpaid. The true rule is stated in Crow v. Gleason, 141 N. Y. 489, 493, 36 N. E. 497:

"In order to make a money payment a part payment within the statute, the burden is upon the creditor to show that it was a payment of a portion of the admitted debt, and that it was paid to and accepted by him as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder. Part payment of a debt is not of itself conclusive to take the case out of the statute. In order to have that effect it must not only appear that the payment was made on account of a debt, but also on account of the debt for which action is brought, and that the payment was made as a part of a larger indebtedness, and under such circumstances as warrant a jury in finding an implied promise to pay the balance. * * * The payment must be made under such circumstances as to show a recognition of a larger debt remaining unpaid."

[3] It is a violence to all the facts in this case to say that the defendant in making the weekly payments, or the yearly payment of the $50, was thereby admitting any indebtedness on account of the $200. Therefore, under any possible construction of the case, it is impossible to allow anything except for moneys growing due within six years prior to the action brought. I favor a reversal of the judgment on the law and the facts.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur (HOUGHTON, J., concurring on the question of the statute of limitations), except BETTS, J., dissenting.