**Hilda Brady JONES, Plaintiff,**

v.

**J. Edward JONES, Defendant.**

United States District Court
S. D. New York.

June 29, 1965.

Fried & Mailman, New York City, for plaintiff; William P. Volin, New York City, of counsel.

Norman Adams, New York City, for defendant.

HERLANDS, District Judge:

This is a motion by plaintiff for summary judgment in the amount of $286,-094.50, or, in the alternative, for summary judgment in the amount of $84,-500.00, together with interest, costs and disbursements. Plaintiff's motion is premised on the claims that there are no genuine issues of fact remaining to be tried and that she is entitled to relief as a matter of law.

The basis of this action is a separation agreement entered into between plaintiff-wife and defendant-husband on July 24, 1947. The crucial part of the agreement, for purposes of the case at bar, is Paragraph Fifth, subsection (3), which relevantly provides as follows:

(3) The Husband agrees to pay or cause to be paid to the Wife, upon the execution of this agreement, the sum of One Hundred Thousand Dollars ($100,000.), provided, however, that should the said sum be not paid as herein provided, such failure to pay shall not be deemed a default

under the terms of this agreement so long as

(a) the Husband shall pay, or cause to be paid, to the Wife upon the execution of this Agreement the sum of $1,000.

(b) and the Husband shall pay to the Wife the sum of $1,000. monthly during each and every month following thereafter during her lifetime, so long as the terms and provisions of this agreement as set forth in paragraph FIRST and FOURTEENTH (2) relating to the obligations of the Wife, are recognized and performed by her, and

(c) provided further that the monthly payments provided in subparagraph 3(b) above are at no time more than 60 days in arrears following the month each of said payments are due and payable.

Paragraph Fifth, subsection (8), contains a provision obligating the husband to pay to the wife, within one year after the execution of the agreement, the sum of $50,000. This obligation was separate and apart and in addition to the $100,000 obligation contained in subsection (3). It was contemplated by the parties, according to the agreement, that the $50,-000 would come from the sale of the parties' residence, although the obligation of the husband to pay the $50,000 was absolute and not conditioned upon the sale of the home.

Plaintiff's interpretation of the above provisions, as stated in her affidavit in support of this motion for summary judgment, is that the defendant was obligated to pay "$100,000 upon execution of the agreement, $1,000 monthly for life, and $50,000 one year from the date of execution."

Plaintiff alleges, and defendant concedes, that the $100,000 and $50,000 payments were never made. The parties also agree, for purposes of this motion, that the husband has made payments to the

wife "at divers times over a period of years" totalling $74,450.50, the last such payment, of $500, having been made on March 5, 1958.

There is nothing in the pleadings or moving papers to indicate when the agreement was first breached, except that the parties agree that the first breach or default occurred more than six years prior to the institution of this action on January 20, 1964; six years being the period contained in the governing statute of limitations, New York CPLR § 213. Thus, plaintiff is willing to concede that, even under her interpretation of the agreement, the obligations to pay the $100,000 and $50,000 are, on their face, barred by the statute of limitations. She seeks, however, to take these obligations out of the statute of limitations for reasons to be discussed below.

Regardless of the statute of limitations, however, plaintiff argues that she is entitled to at least the $1,000 monthly payments due for the six years immediately prior to institution of the suit and also for the period of time commencing with the institution of suit to date. The foregoing argument is the basis for the lesser of the two sums ($84,500) sought by plaintiff in this motion.

A close reading of the agreement reveals that defendant was never *obligated* to pay $1,000 monthly payments to the plaintiff. Defendant's obligation was limited to the payment of $100,000 upon execution of the agreement and $50,000 within one year following execution. This sum of $150,000 is, so far as here relevant, the only liability that defendant ever assumed under the agreement. The $1,000 monthly payments described in the agreement merely represented a means whereby defendant could avoid payment of the $100,000 without being in default under the agreement.

Should defendant not pay the $100,000 and should he also not pay the $1,000 monthly payments, then sixty days following the failure to make such payments, plaintiff would have an action against defendant for the *$100,000.* There was only one liability under this

agreement and only one breach. The statute began to run from the time of the breach. There was no continuing duty to make any periodic payments.

 Thus, plaintiff's motion for summary judgment, in the alternative, for $84,500, is denied.

Plaintiff's entire action must stand or fall according to whether she is able to obviate the effect of the running of the statute of limitations.

Plaintiff argues that a letter sent to plaintiff by defendant, dated January 21, 1958, was sufficient, under the law of New York, the applicable law in this case, to bring into operation what is now section 17–101 of the General Obligations Law, McKinney's Consol. Laws, c. 24–A, former section 59 of the Civil Practice Act and then, later, section 33–d of the Personal Property Law. That section provides as follows:·

> An acknowledgment or promise contained in a writing signed by the party to be charged thereby is the *only* competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules other than an action for the recovery of real property. This section does not alter the effect of a payment of principal or interest.

The letter of January 21, 1958 contains the following relevant statements:

> I * * * am terribly sorry for my delinquency. I should like to outline my situation——along with sending you, herewith, the best I can possibly do right now.
>
> * * * * * *
>
> Out of the program briefly above outlined, I promise you, if our efforts give the results expected, that I will fix you up very comfortably. I want to do this genuinely and very badly and hope you can bide your time a little longer with what small sums I can in the meantime send to you, so that, in the end, I can per-

form to my liking, to yours and to what I know my duty and responsibility to you are.

\* \* \* \* \* \*

Hang on as well as you can—I will do better for you as time goes on.

\* \* \* \* \* \*

Be of good cheer, have hope and I feel certain I will perform in big fashion during 1958. I will then be able to assign you some production worth while.

■ The rule of law to which section' 17–101 of the General Obligations Law relates is that

if a debtor makes a new promise to his creditor to pay a debt that has already become unenforceable by operation of a statute of limitations, this promise is enforceable in accordance with its own terms without any new consideration.

1A Corbin, Contracts 289 (1963).

In other words, there must be a new *contract*, consideration for which is the moral obligation to pay the original debt. This contract may be express or implied, an acknowledgment of the past debt being merely a fact from which a new promise may be implied. Bloodguard v. Bruen, 8 N.Y. 362 (1853).

■ Unless there is an express promise or contract, the terms of which are clear and unambiguous, there is a question for a trier of fact to determine on the basis of all the circumstances in the case, including parol evidence, whether a promise is to be implied, and, if so, what are the terms of the new implied contract. See Bloodguard v. Bruen, supra at 369.

■ It is a genuine issue of material fact as to whether the letter of January 21, 1958 was sufficient to impose upon the defendant a new obligation to fulfill all of the terms of the original separation agreement.

The optimum legal effect that could be given to the letter of January 21, 1958 is that the defendant made an implied con-

ditional promise—the terms of which must be found by a trier of fact—conditioned upon defendant's success in the endeavors outlined in the body of the letter. There is no allegation in this case that defendant was successful in these endeavors; and that, alone, would be sufficient ground for denial of plaintiff's motion for summary judgment insofar as it is based upon the letter of January 21, 1958. Bloodguard v. Bruen, supra at 370; Tebo v. Robinson, 100 N.Y. 27, 29, 2 N.E. 383 (1885); 1 A Corbin, op. cit. supra § 215.

Plaintiff relies upon the payment of $500 on March 5, 1958, invoking the rule that "the making of a part payment on account of a larger claim then identified and not denied, justifies the inference of a promise to pay the balance and revives [after the running of the statute of limitations] an enforceable right to that balance." 1 A Corbin, op. cit. supra at 301–02.

■ As was stated in McLaren v. McMartin, 36 N.Y. 88, 90 (1867):

Payment by the debtor \* \* \* is evidence \* \* \* from which an acknowledgment of the residue of the debt may be implied. It does not, however, even in that case constitute an express promise, nor amount *per se* to a renewal; but it is evidence from which an intention to renew the original promise may be inferred.

■ "The real question is: What was the defendant's intent in paying" (Hughes v. Eddy Valve Co., 147 App.Div. 356, 360, 131 N.Y.S. 744, 747 (3d Dep't 1911) (Kellogg, J.)) the $500. This question poses a material issue for the trier of fact: whether, on the basis of all of the evidence, there was an implied promise on the part of the defendant to meet his obligations under the separation agreement in whole, in part, or as modified. Crow v. Gleason, 141 N.Y. 489, 495, 36 N.E. 497 (1894); Shoemaker v. Benedict, 11 N.Y. 176, 184–185 (1854); Arkport State Bank v. Nutter, 282 App.Div. 412, 122 N.Y.S.2d 665 (4th Dep't 1953).

The existence of this question of fact precludes the granting of plaintiff's motion for summary judgment.

In view of the court's interpretation of the agreement as a matter of substantive law and in view of the existence of genuine issues of material fact, the court hereby denies plaintiff's motion for summary judgment in all respects. So ordered.