In re BANKS.

(District Court, N. D. New York. September 15, 1913.)

1. BANKRUPTCY (§ 172*)—OWNERSHIP OF ASSETS—FILING PETITION.

   Prior to the filing of a petition in voluntary bankruptcy, the bankrupt is the owner of all his property and may sell and incumber it except in fraud of creditors or in violation of some provision of law, and after filing the petition and prior to adjudication he holds the title in trust for creditors.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 220; Dec. Dig. § 172.*]

2. BANKRUPTCY (§§ 164, 314*)—DEBTS BARRED BY LIMITATION—RENEWAL— PAYMENT ON ACCOUNT BEFORE FILING PETITION.

   Where a bankrupt, knowing his insolvency and that he is about to file a petition in bankruptcy, before filing the same went to two of his creditors whose claims were barred by limitations and who had no knowledge of his insolvency or of his intention to become a bankrupt and paid to each a dollar with the statement that he did so to renew the debt, such act was not an attempt to create a preference but was effective to renew the debt so as to entitle the creditors to prove their claims against the bankrupt's estate, and this though the bankrupt in his schedules referred to the debts as evidenced by notes, when in fact he owed such cred-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

itors only one claim each which were on open accounts for goods sold and delivered.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 267, 469–473, 478, 483–487, 489, 490; Dec. Dig. §§ 164, 314.*]

3. BANKRUPTCY (§ 314*)—CLAIMS PROVABLE—DEBTS BARRED—NEW PROMISE—DESCRIPTION OF DEBT—LISTING CLAIMS IN BANKRUPT'S SCHEDULES.

Where a bankrupt owed two claims for goods, wares, and merchandise, both of which were barred by limitations, the fact that he listed the claims in his schedules in bankruptcy, describing them as evidenced by notes, when in fact no notes had been given, did not constitute a new promise sufficient to renew the claims under the rule that a new promise to pay in order to take the debt out of the statute must satisfactorily appear to refer to the very debt in question.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469–473, 478, 483–487, 489, 490; Dec. Dig. § 314.*]

4. BANKRUPTCY (§ 314*)—PAYMENT BY BANKRUPT—DEBT—RENEWAL—FRAUD.

A payment made by a bankrupt immediately before bankruptcy and the filing of his petition, to renew an outlawed debt, and to enable the creditor to prove his claim and share in the distribution, the creditor having no reasonable cause to believe it would operate as a preference, was neither a fraud on creditors nor the Bankruptcy Law.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469–473, 478, 483–487, 489, 490; Dec. Dig. § 314.*]

5. BANKRUPTCY (§ 340*)—CLAIMS—PROOF—EVIDENCE—ISSUES.

Where a trustee's petition for re-examination of claims did not allege that they were for too large a sum but rested entirely on the statute of limitations, and no application to amend was made, the exclusion of evidence to show an alleged uncredited payment on one of the claims was not error.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527; Dec. Dig. § 340.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Ira O. Banks. Proceedings to review referee's order allowing the respective claims of Philip Quencer and John Quencer. Affirmed.

Curtis L. Hildredth, of Watertown, N. Y., for trustee.

Edgar V. Bloodough, of Watertown, N. Y., for claimants.

RAY, District Judge. The referee has allowed the claim of John Quencer at the sum of $792.03 and the claim of Philip Quencer at the sum of $701.26. The allowance of these claims is challenged on the ground that they were barred by the six years' statute of limitations at the time the petition in bankruptcy was filed, and that the bar of the statute had not been removed by part payment or by an acknowledgment of the debt in writing, as provided by section 395 of the Code of Civil Procedure of the state of New York, which provides that:

"An acknowledgment or promise contained in a writing, signed by the party to be charged thereby, is the only competent evidence of a new or continuing contract, whereby to take a case out of the operation of this title. But this section does not alter the effect of a payment of principal or interest."

On the 7th day of September, 1912, the bankrupt, Ira O. Banks, signed and verified his petition and schedules in voluntary bankruptcy, which were filed September 12, 1912, and adjudication made. In the

schedules of debts owing the bankrupt listed, "Philip Quencer, Watertown, N. Y., note, $250," and "John Quencer, Perch River, N. Y., note, $250," and no mention was made therein of any other debt owing them or either of them or of the consideration for the note, if there was one. After the trustee was appointed and qualified, and September 25, 1912, Philip Quencer filed his verified claim for:

| | |
|---|---:|
| 71 tons of hay at $9.50 | $674 50 |
| September, 1904, by cash | 200 00 |
| | $474 50 |
| Interest for 8 years | 227 76 |
| | $702 26 |
| 1912. Received | 1 00 |
| | $701 26 |
| Balance due | $701 26 |

October 14, 1912, John Quencer filed his claim with the referee for:

| | |
|---|---:|
| 66 tons of hay at $11 | $726 00 |
| Interest to April 1, 1905 | 23 23 |
| | $749 23 |
| April 1, 1905, cash | 200 00 |
| | $549 23 |
| Interest to September 1, 1912 | 244 40 |
| | $793 68 |
| September, 1912, cash | 1 00 |
| | $792 63 |

—with interest from September 1, 1912.

In the verified claims filed there is no mention of or reference to a note or notes. The claims state:

"That the consideration of said debt is as follows: 'Goods, wares and merchandise sold and delivered to the said bankrupt at his special instance and request.' * * * Nor has any note or other evidence of said debt been received except as herein stated."

As stated no note is mentioned in the claim. The total of all claims of other creditors proved is $721.69.

As to the claim of Philip Quencer it is asserted that on the 10th or 11th of September, 1912, some five days after the petition was verified and one or two days before it was filed, Banks paid to Quencer the sum of $1 and stated to him that he wanted to pay him the dollar to renew the debt. As to the claim of John Quencer, it is asserted that on the 10th or 11th day of September, 1912, Banks paid to him the sum of $1 and stated that he paid it to him for the purpose of renewing the debt. What debt was not mentioned.

[1] It is, of course, true that until a bankrupt files his petition in bankruptcy, he is the owner of all his property and may sell or incumber it, except in fraud of creditors or in violation of some provision of law, as he sees fit. Even after the petition is filed and down to the time of the adjudication, the title remains in the bankrupt, but during that time he holds in a sort of trust capacity for creditors.

[2] A debtor as a general rule may at any time acknowledge a debt against which the statute of limitations has run and renew same by a promise in writing which identifies the debt or by a partial payment of the specific debt. A recognition of the debt by a part payment thereof operates as a new promise to pay the remainder. If, as against the trustee and the creditors, this renewal of the debt cannot be effected by an acknowledgment of the debt made in the schedules and filed with the petition, still if the acknowledgment in writing is made before the petition is filed or a part payment of the specific debt is made before the filing of the petition, in the absence of fraud on the law or collusion, I see no reason why the transaction is not valid, unless made under such circumstances as to amount to a preference. If within four months of filing a petition the debtor makes a payment on an outlawed debt intending at the time to go into bankruptcy knowing his insolvency, and the person receiving the payment knows the insolvency and has reasonable cause to believe that a preference is intended, it would not be such a payment as would renew the debt. The transaction would be in fraud of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]). The transaction could be repudiated by the trustee and the payment recovered.

By section 60a of the Bankruptcy Act, as amended (Act June 25, 1910, c. 412, § 11, 36 Stat. 842 [U. S. Comp. St. Supp. 1911, p. 1506]), it is provided that:

"A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition * * * or made a transfer of any of his property, and the effect of the enforcement of such * * * transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

And section 60b provides that:

"If a bankrupt shall * * * have made a transfer of any of his property, and if, at the time of the transfer, * * * the bankrupt be insolvent and * * * the transfer then operates as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such * * * transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

Section 57g of the act provides that:

"The claims of creditors who have received preferences, voidable under section 60, subdivision b, * * * shall *not be allowed* unless such creditors shall surrender such preferences, conveyances, transfers, assignments, or incumbrances."

If, then, the payment to renew a debt be made on the eve of bankruptcy (that is, the filing of a petition) and be made under such circumstances and with such knowledge as to constitute the giving and receipt of a preference, the claim cannot be allowed unless the preference is surrendered. The amount of the payment is immaterial. If the payment is recovered (that is, was in fraud of the law), then how can it operate to renew the debt? It leaves the whole matter as if no payment had been made.

It is plain that Banks knew his insolvency and intended to prefer both John and Philip Quencer. What knowledge did they have? So far as appears, these claimants had not taken any proceedings to collect or reduce their claims to judgment, except one of them says he had spoken of the debt, we may infer, when he met Banks. All deny that the claimants had any knowledge of the contemplated bankruptcy proceedings prior to the filing of the petition. All fail to remember anything that was said at the time the $1 payments were made, except the statement of Banks that he wanted to pay the $1 to renew the debt.

[3] The alleged renewal of the debts by listing claims in the schedules, "creditors whose claims are unsecured, * * * Philip Quencer, Watertown, N. Y., note, $250; John Quencer, Perch River, N. Y., note, $250"—cannot be held to renew these claims on accounts two years outlawed when it appears that no note whatever was given. It appears in such case that the debtor had notes in mind, not an account for goods, wares, and merchandise sold and delivered. If he intended to renew a note, he certainly did not intend to renew an account for hay for which no note had been given.

"The general rule is that a new promise, whether made before or after the bar is complete, will avoid the operation of the statute of limitations." 25 Cyc. 1328; Winchell v. Hicks, 18 N. Y. 558; Esselstyn v. Weeks, 12 N. Y. 635; Wright v. Parmenter, 23 Misc. Rep. 629, 52 N. Y. Supp. 99.

See the many cases cited in note, 25 Cyc. 1328.

"The general rule is that an acknowledgment or promise to pay, in order to take the debt out of the statute, must satisfactorily and certainly appear to refer to the very debt in question." Stafford v. Bryan, 3 Wend. (N. Y.) 532; Clark v. Dutcher, 9 Cow. (N. Y.) 674; 25 Cyc. 1330, and cases there cited.

In Re Currier (D. C.) 27 Am. Bankr. Rep. 597, 601, 602, 192 Fed. 695, the bankrupt filed his voluntary petition in bankruptcy not knowing that he had sufficient property to pay all his debts when in fact he did have. He scheduled the valid existing claims against him and included and scheduled an outlawed claim. This was duly approved and allowed. Later the bankrupt discovered that he had property more than sufficient to pay all his debts, and he (the bankrupt) then moved to expunge the scheduled outlawed claim and that it be disallowed. No creditor objected or had objected to the proof and allowance of that claim, nor did the trustee in their behalf. This court discussed the whole situation, but all that it decided was that under such circumstances the bankrupt himself, and wholly in his own interest and in order to secure for himself the balance of his own estate after paying the claims which were *not* outlawed prior to making his schedules, could not allege that a claim which he scheduled as valid and subsisting was outlawed and barred by the statute; and that under the circumstances the creditor whose claim was barred *when the petition was filed* could share in distribution only after the others were paid in full.

Here creditors are objecting through the trustee who represents them. Here the question of the effect of a partial payment on an outlawed claim on the eve of filing a voluntary petition in bankruptcy as

between creditors, those whose claims *were* and those whose claims *were not* barred by the statute of limitations at that time, is in question. In Re Currier the question was between a solvent but alleged bankrupt in his own interest and his creditors.

There are very substantial reasons why an insolvent person on the eve of going into voluntary bankruptcy should not be permitted, as against his creditors whose claims are not barred by the statute of limitations, to renew by a small partial payment thereon those claims which are barred by the statute. Creditors whose claims are barred by the statute usually do not seek to enforce them by suit and judgment as they feel assured the debtor will plead the statute. If, then, a person who has been out of business seven or eight or more years, and who has no judgments against him and no claims against him which have accrued due within six years but does owe debts to a large amount barred by the statute, starts in business and obtains credit and purchases and has in possession a large amount of property recently purchased on credit, but finds himself unable to meet his obligations, he may make a small payment on each of his outlawed debts and then go into bankruptcy and both *ancient and modern* creditors, so to speak, will share in the distribution of the proceeds of such recently acquired property. This would operate as a fraud on his creditors whose claims were not barred by the statute. Still if there was no collusion and no reasonable cause on the part of the creditors receiving the payments to believe that a preference was intended, and the defense of the statute is personal to the creditor until after a petition is filed, how can the court hold that such renewal by part payment is forbidden by any law? Section 67e of the bankruptcy act provides that:

"All * * * transfers * * * of his property or any part thereof made, or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act and within four months prior to the filing of the petition *with the intent and purpose on his part* to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except," etc.

And the property so transferred remains a part of the bankrupt's estate. It would seem, not from direct evidence but from some statement or question asked, that some person had obtained a judgment against Banks, and we may infer that this was the reason of his going into bankruptcy. This is surmise, however. Assume this to be the case, we further infer that Banks made up his mind that all his creditors should share in his estate, those whose claims were barred by the statute and those whose claims were not so barred, and hence he made the payments referred to after the execution of, but before filing, his petition. Assume this to have been his purpose, was the transfer of the $1 on the occasion in question one "with the intent and purpose *on his part* (Banks) to hinder, delay, or defraud his creditors or any of them?" I am not prepared so to hold. So far as this court is informed, it has not been held that a payment made on account or on a note for the express purpose of renewing an outlawed claim of itself is or operates as a fraud on creditors within the meaning of the statute.

Suppose we take the position that the payment of the $1 on each of these claims, after the petition was verified but before it was filed, was the creation of new debts or obligations, and I am not able to find any law which will prevent their proof and allowance. The status of the claim must be determined as it existed at the time the petition was filed. Suppose the parties had figured up the accounts and Banks had given promissory notes intermediate the verification of the petition in bankruptcy and its filing, would or would not the claim be provable? I am of the opinion that Banks, as against his other creditors, in the absence of fraud and collusion, had the right to renew these claims at any time before he filed his petition. It does not appear that the Quencers, or either of them, knew Banks was insolvent. It seems to me that the law has not prohibited the renewal of outlawed claims under such circumstances.

It is contended that there is nothing to show that the bankrupt intended to pay anything on an account or debt due for hay sold and delivered, but that the evidence discloses an intent to make a payment on a promissory note. A few days before the payments were made, the bankrupt made up his schedules of indebtedness which were attached to and formed a part of his petition in bankruptcy. Here he stated that he owed to John Quencer a note of $250 and to Philip Quencer a note of $250; that is, *debts evidenced* by such notes. The consideration of these notes is not mentioned in the schedules. It is evident that Banks at that time had in mind claims against himself in favor of the Quencers evidenced by notes, $250 to each. The date of the notes was not given. So far as appears, this was his state of mind and these the debts he had in mind when he went to the Quencers on the occasions mentioned. There was no conversation as to any indebtedness except Banks handed to each $1 and said he wanted to pay or paid the dollar to renew *the debt*. In fact, so far as the proof goes, no note had been given to one of the Quencers, but a note of $400 had been given to the other which he had handed back, under what conditions and for what reason does not appear. In fact, as the referee finds, Banks owed a balance to each of the Quencers for hay sold and delivered and nothing else; the claim, however, being barred by the statute. The contention is, nothing having been said regarding the nature or character of the debt, that Banks had notes in mind and intended to make a payment on notes and not on an account or claims for hay sold and delivered. But if there was only one claim or debt, and that for hay, is it material that Banks supposed he had given a note for the debt when in fact he had not? It is only material that a specific indebtedness was recognized and a payment made to apply on it as a partial payment of a greater indebtedness. If it was stated that the dollar was paid to renew the debt, a larger debt than $1, and there was but one debt, here is a plain recognition of a larger sum due than the amount paid and an implied promise to pay the remainder. If the debt was for hay, is it material that it was not evidenced by a promissory note as Banks supposed? On this subject see Crow v. Gleason, 141 N. Y. 489, 493, 494, 36 N. E. 497. This case is cited and approved Brooklyn Bank v. Barnaby, 197 N. Y. 210, 90 N. E. 834, 27 L. R. A. (N. S.) 843. See, also, Hughes v. Eddy Valve Co.,

147 App. Div. 356, 131 N. Y. Supp. 744, and Murphy v. Walsh, 113 App. Div. 428, 99 N. Y. 346. I think the claimants brought themselves within the principles enunciated in the cases cited.

[4] I cannot hold that a payment made immediately before bankruptcy, or filing a petition in bankruptcy, to renew an outlawed debt and to enable the creditor to come in and share in the distribution, the one receiving it having no reasonable cause to believe it will operate as a preference, is a fraud on creditors or the law.

[5] The petition of the trustee for a re-examination of these claims and praying that they be expunged from the list of proved claims did not allege that they were for too large a sum. The reason for disallowance alleged was the bar of the statute. In one case, that of Philip Quencer, the bankrupt was asked if he had not paid $25 at one time on the claim. This evidence was offered, evidently, to reduce the claim in case the court held it not barred by the statute. The referee held that, under the petition as it stood, the trustee could not go into the question of the amount of the claim. The trustee should then have asked to amend, and a refusal to permit the amendment and allow proof of the exact amount of the claim would have been error. But the trustee did not seem to regard the question of much importance, and I do not think it was error to reject the evidence. The same question had been raised regarding the other Quencer claim, and the questions were answered.

On the whole, I am of the opinion that the order of the referee allowing the claims should be affirmed. So ordered.