### In re SALMON.

### Ex parte SALMON.

#### (District Court, S. D. New York. November 29, 1916.)

1. LIMITATION OF ACTIONS ⊙➞163(1)—PAYMENT ON BARRED DEBT.

A payment, if clearly intended to be made on an outlawed debt, as where there was no other debt, is sufficient, as between the parties, to take it out of the statute, without any further acknowledgment from which a new promise may be inferred.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 642; Dec. Dig. ⊙➞163(1).]

2. BANKRUPTCY ⊙➞178(2)—PAYMENT ON BARRED DEBT—VOID "INCUMBRANCE."

The promise arising from payment on an outlawed debt by one knowing of his inevitable insolvency, defeating the defense of limitations, a valuable right, which will pass to his creditors, is an "incumbrance," within Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 (Comp. St. 1913, § 9651), declaring void against creditors incumbrances of property by one within four months prior to bankruptcy proceedings, with intent to defraud his creditors, or any of them; his intent arising from his knowledge of the conditions, and knowledge by the holder of the debt not being necessary.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 267, 269, 270; Dec. Dig. ⊙➞178(2).

For other definitions, see Words and Phrases, First and Second Series, Incumbrance.]

In Bankruptcy. In the matter of Charles Salmon, bankrupt. From an order of the referee expunging his claim, Hamilton H. Salmon, executor, appeals. Affirmed.

This is an appeal from an order of a referee in bankruptcy expunging the claim of Hamilton H. Salmon, as executor of Hamilton H. Salmon, deceased, in the sum of $25,295.66, with interest of $34.771.88, making $60,067.54, which claim was filed against the estate of the bankrupt for moneys lent from time to time between March 1, 1890, and May 18, 1896. Payments were made upon this claim, also, from time to time; the last payment being on June 3, 1896, for $175. On January 27, 1916, the day before the petition in bankruptcy was filed against the bankrupt, he came to the office of the claimant, who was his brother, and brought with him a note for $123.09, in his own favor, executed

⊙➞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by Bernstein & Co., and indorsed by him. This note he delivered to the claimant, and asked that he put it to his credit, adding that he was having a hard time to finance himself. The claimant had repeatedly asked the bankrupt for payment when he saw him, but never had received anything between the dates in question. The claimant is willing to restore the payment received on account, but wishes the claim allowed. The referee expunged the claim because the payment was not sufficient to toll the statute of limitations.

Williams, Folsom & Strouse, of New York City, for claimant.
Blau, Zalkin & Cohen, of New York City, for trustee.

LEARNED HAND, District Judge.   [1] The payment was certainly enough to take the case out of the statute as between the bankrupt and Hamilton H. Salmon.   It makes no difference that the debt was barred (Brooklyn Bank v. Barnaby, 197 N. Y. 210, 90 N. E. 834, 27 L. R. A. [N. S.] 843), so long as the payment was certainly intended to be applied to the debt (Lawrence v. Harrington, 122 N. Y. 408, 25 N. E. 406).   The language cited by the referee was originally taken from Crow v. Gleason, 141 N. Y. 489, 493, 36 N. E. 497, where it was in place because there was no evidence that the payment was intended to apply to the debt; but it must not be understood as holding that any payment, if intended to apply upon the debt, is not an adequate acknowledgment from which the new promise may be inferred.   The only proper question is whether the payment was clearly intended to apply upon the debt; the rest follows as of course.   Harper v. Fairley, 53 N. Y. 442, 444; Jefferson County Bk. v. Dewey, 181 N. Y. 98, 106, 73 N. E. 569.   As there was no other debt between the parties, and as the bankrupt asked to have the note applied to his credit, there can be no possible question that he intended to make a part payment.

[2]  The question is whether this effect is different, in view of the bankrupt's impending insolvency and his knowledge of that fact, which is not disputed.   Taken merely as a payment on the debt, the situation may be thought to be the familiar one of a preference, and it may be right to say that, unless the creditor knew of the insolvency, the payment will stand, though that question is not up for decision, and is not itself free from difficulty.   But the important aspect here is the new promise which is inferred from the payment.   Was that feature affected by the insolvency of the bankrupt?   I have found only two cases dealing with the question—In re Banks (D. C.) 207 Fed. 662, 665, in which Judge Ray makes the question turn upon the creditor's knowledge of the insolvency, there having been a payment; and In re Blankkenship (D. C.) 220 Fed. 395, where Judge Bledsoe allowed a written acknowledgment to revive the debt, the creditor being ignorant of the bankrupt's financial condition.

I cannot agree that a bankrupt, finding himself in a desperate financial position, may revive an outlawed claim by a written acknowledgment or a part payment.   If the situation is looked at without the usual fiction, such an act creates anew the obligation quite as much as though the bankrupt on the eve of bankruptcy were to execute a bond without consideration in a jurisdiction where no consideration is necessary to support a bond.   The result is no different if the usual fiction is accepted under which the payment is taken as evidence of a new promise to

pay the indebtedness. Under that theory it still remains equally true, as in the case of a bond, that the new promise alone recreates the obligation. Such a promise seems to me to fall within the term "incumbrance" in section 67e of the Bankruptcy Act, and within the word "charge" of section 35 of the New York Personal Property Law (Consol. Laws, c. 41). By it alone the assets of the bankruptcy are charged with an obligation which was either nonexistent before, or against which there was a valid defense, it makes no difference which.

Such being the result of the payment, the only remaining question is of intent. That the payment results in diminishing the fund available to other creditors is obvious, since by hypothesis the debtor who is insolvent, receives no new consideration. If, in addition, he knows of his inevitable insolvency, he knows that this result must follow, and he intends it, though it may not be his actuating motive. But it is argued that, though the payment defeats pro tanto his other creditors, it is only for the benefit of another creditor, who should be still recognized as such in spite of his debt's being subject to a complete defense.

Yet, even if one preserves the most orthodox theory and regards the debt as still existing, subject to its defense, a theory full of vicious casuistry, the defense to the debt still remains a valuable right, which will pass to the bankrupt's creditors. The whole presupposition of the rules against fraudulent conveyances is that from the time a debtor knows that he is insolvent he holds all his property subject to the interests of his creditors. While he may continue its management in the genuine interest of both them and himself, he loses all right to diminish its value to them. Certainly there is no reason why his disability should not extend to the destruction of any defense he may have to an otherwise valid claim. It is true that the defense of the statute of limitations has at times been called unconscionable; but that view does not now prevail, nor is there the least reason in policy why it should. The case at bar is a good instance of the injustice of treating the defense of the statute as different from any other defense, since a debt like this, outlawed by more than three times the statutory period, cannot in the nature of things have been expected by the parties to continue as an obligation with the usual coercive sanctions. By the time of the bankruptcy it was certainly meant only as a moral obligation, and it would be highly unjust now to allow it by a mere device to reassume its place among other debts which were supposed to have all the sanctions of law.

In this aspect it is unnecessary to consider whether or not the creditor, Hamilton H. Salmon, was put on inquiry as to the bankrupt's insolvency, the distinction taken in Re Banks, supra, because the question is only whether the bankrupt may gratuitously destroy a part of his estate, i. e., a valid defense, in the interest of a third person, and to the prejudice of his creditors. The case is analogous to a voluntary transfer in fraud of creditors, where it is never necessary to show that the transferee had notice. Young v. Heermans, 66 N. Y. 374, Beecher v. Clark, 12 Blatchf. 256, Fed. Cas. No. 1,223.

The order is affirmed, and the petition dismissed.