### UNITED STATES ex rel. WALDMAN et al. v. TOD, Commissioner of Immigration.

(Circuit Court of Appeals, Second Circuit. March 20, 1923. Rehearing Denied April 9, 1923.)

#### No. 202.

1. Aliens ⚷➡46.—Literacy test of immigrant in two languages not authorized.

Under Immigration Act Feb. 5, 1917, § 3 (Comp. St. 1918, Ann. Supp. 1919, § 4289¼b), providing in respect to the literacy test that "each alien may designate the particular language or dialect in which he desires the examination to be made," there is no authority to require examination in both Hebrew and Yiddish.

2. Habeas corpus ⚷➡75—Return of board of special inquiry as to literacy test should state facts showing that statute was complied with.

In the return of a special board of inquiry as to the literacy test of an alien, a statement that the test was given is not sufficient, but there

---
⚷➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

should be at least an understandable description of the test actually made, and of the respects in which the immigrant failed to read, so that the courts may be informed from the record whether or not the hearing was in accordance with the statutory requirements.

3. **Aliens ⬦=44—Alien has right of appeal from decision of board of special inquiry in reopened case.**

Under Immigration Act February 5, 1917, § 17 (Comp. St. 1918, Ann. Supp. 1919, § 4289¼ii), and the rules made thereunder, which give an alien the right of appeal from a decision of a board of special inquiry, whether on the original hearing or after the case is reopened; and providing that he shall be informed of such right, there is no authority in the Commissioner of Immigration, in ordering reopening of a case, to direct that, if the former decision of the board is reaffirmed, it shall not again be referred to the department, and a final order of deportation made by the board in such case without giving the alien the right of appeal is without jurisdiction and void.

4. **Aliens ⬦=32(1)—Immigrant claiming citizenship entitled to judicial hearing.**

A Chinese person, claiming United States citizenship, is entitled to a judicial hearing before being excluded from entry, but an alien is not.

5. **Habeas corpus ⬦=117(2)—Judgment discharging an alien because of irregularity in proceedings of immigration officers not conclusive on merits.**

A judgment in habeas corpus discharging an alien held for deportation, because of the illegality of the proceedings, is not a bar to new proceedings against the relator.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus, on the relation of Szejwa Waldman and her three minor children, Zenia, Bessie, and Sophia, against Robert E. Tod, Commissioner of Immigration at the Port of New York. From an order dismissing the writ, relators appeal. Reversed.

An order of the District Court dismissed a writ of habeas corpus and remanded the relators to the custody of the Commissioner of Immigration at the Port of New York. The petition of Szejwa Waldman alleged that she and her children were seeking admission to the United States to avoid religious persecution in Russia, the country of their last permanent residence; that she escaped in August, 1921, and ultimately made her way to France, but was obliged to wait 17 months in Poland to secure her passport, which was not signed until December 12, 1921, and was not viséed until July 14, 1922. She further alleged, because of incidents set forth, that if she were deported from the United States she would be finally returned to Russia, where she would be in danger of death on account of her religious faith. She set up in her petition that she was exempt from the operation of the literacy test, and also that she had not a full and fair hearing before the immigration authorities. The return to the writ set forth that the aliens arrived at New York on August 28, 1922, and that on August 30, 1922, a hearing was accorded to them before a board of special inquiry held at Ellis Island, New York Harbor; that a medical certificate was introduced in evidence, which certified that the daughter Zenia was afflicted with dislocation of the left hip, shortening of the left leg, and lameness, which might affect her alibity to earn her living. It was further alleged that the board unanimously excluded the mother as a person unable to read, the daughter Zenia as a person suffering from a physical defect of such nature that it might affect her ability to earn a living, and that all the aliens should be excluded as likely to become a public charge and as assisted aliens. The return further alleged that due procedure was had and that the aliens received a full and fair hearing. Accompanying the return and as a part

⬦=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

thereof were the minutes of hearings held before boards of special inquiry on August 30, 1922, and September 19, 1922.

The following appears from the minutes of August 30, 1922: Szejwa Waldman was examined and testified that she and her children had always lived at Proskurow, Russia, and that her departure from Russia was because of religious persecution. Her ability to read was tested in Yiddish. The test is not set forth nor described; but the record contains an observation by Travis, one of the members of the board of special inquiry: "Reads some of the words, and repeats to interpreter without looking at the text, but cannot make any connecting thought." Szejwa Waldman further stated that she was a white goods seamstress, that her married brother had paid her passage, and that she was going to her brother in Providence, where she would join three brothers and three sisters. A medical certificate was introduced in evidence, which certified to the physical condition of Zenia, as set forth in return. It further appeared that one of Szejwa Waldman's brothers had been contributing to the support of her and her children from time to time. Two brothers testified, and from their testimony it appears that each was in comfortable circumstances and each was willing and competent to take care of the relators. At the conclusion of the hearing the board unanimously decided that the mother should be excluded as a person unable to read, and Zenia should be excluded as a person suffering from a physical defect which might affect her ability to earn a living, and all relators should be excluded as likely to become a public charge and assisted aliens. This decision was stated to the aliens, and they were informed that they had the right to appeal to the Secretary of Labor, and they stated that they desired so to appeal.

On September 18, 1922, the chief deporting officer at Ellis Island received the following letter, signed by H. R. Landis, Assistant Commissioner:

"Bureau letter of September 15th directs in the case of Szejwa Waldman and children, S I 47, SS France, August 28th, that the case be reopened before the board of special inquiry and the woman be given a re-examination as to her ability to read in *both* Hebrew and Yiddish, if she so chooses, and in case she fails to pass the test that they all be deported *without* further reference of the case to the department."

There is no copy in the record of the bureau letter of September 15th. A hearing was had before the board of special inquiry. The first board had consisted of Inspectors Connor, Travis, and Lovejoy. The second board consisted of Inspectors Connor, Scarlett, and Parker. The examination of the second hearing is very brief and is here set forth.

"Q. What is your name? A. Szejwa Waldman.

"Q. You arrived on the steamship France, accompanied by your three children, who are present?

"Q. Your case has been reopened by authority of the bureau to re-examine you as to your ability to read both Hebrew and Yiddish. Can you read in either language? A. I read a little, and I will soon learn more, if given an opportunity.

"Q. In what language can you read a little? A. Yiddish. (Test given Class 5–1654 Yiddish *and* Hebrew Class F–5681; failed to read.)

"By Mr. Scarlett: I move that the former decision be affirmed.

"By Mr. Parker: I second the motion.

"By Mr. Connor: I make it unanimous. (Alien informed of re-exclusion for reasons given at the former hearing.)"

The aliens were not informed of their right to appeal to the Secretary of Labor, and no appeal was taken. The aliens were then ordered deported, and hence this writ.

O'Brien, Malevinsky & Driscoll, of New York City (Laurence L. Cassidy, of New York City, and William A. Needham, of Providence, R. I., of counsel), for appellants.

William Hayward, U. S. Atty., of New York City (James C. Thomas, Jr., Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above).  [1] .
Preliminarily it is important to point out that this return fails to set
forth the details of the test applied either at the first or second hearing.
Section 3 of the immigration laws (Comp. St. 1918, Comp. St. Ann.
Supp. 1919, § 4289¼b) clearly distinguishes between Hebrew and
Yiddish.  It provides, inter alia, as follows:

> "That after three months from the passage of this act, in addition to the
> aliens who are by law now excluded from admission into the United States,
> the following persons shall also be excluded from admission thereto, to wit:
> "All aliens over sixteen years of age, physically capable of reading, who
> cannot read the English language, or some other language or dialect, in-
> cluding Hebrew *or* Yiddish:  *  *  *  That for the purpose of ascertaining
> whether aliens can read the immigrant inspectors shall be furnished with
> slips of uniform size, prepared under the direction of the Secretary of
> Labor, each containing not less than thirty nor more than forty words in
> ordinary use, printed in plainly legible type in some one of the various lan-
> guages or dialects of immigrants.  *Each alien may designate the particular
> language or dialect in which he desires the examination to be made,* and shall
> be required to read the words printed on the slip in such language or dia-
> lect."  (Italics ours.)

From the foregoing, it is evident that the Congress realized that there
is a distinction between Hebrew, a classic language, and Yiddish.  At .
the hearing of August 30, 1922, the mother was tested solely in Yid-
dish.  The department instructions contained in the letter of September
19, 1922, ordered a re-examination as to the mother's ability in both
Hebrew and Yiddish.  For this double test, there is no warrant in the
statute and any one familiar with these two languages knows that a
person of the type of this relator might be able to read Yiddish and
unable to read Hebrew.  It will be observed also that, although the
mother in her examination of September 19, 1922, stated that she
could read a little in Yiddish, the board nevertheless reported that they
examined her in both Hebrew and Yiddish.

[2]  This procedure in itself was contrary to the requirements of
the statute and deprived relators of a hearing which to have been fair
must, at least, have been in accordance with the statute.  As other
cases of this general character may arise, it is desirable to point out,
also, that in making returns it should appear whether or not the de-
tails of the statutory test were conformed with.  The statement that
the test was given is not enough.  "Class 5–1654" conveys no informa-
tion to the court.  There should, at least, be an understandable descrip-
tion of the test actually made by the board and of the respects in which
the immigrant failed to read, so that the courts may be informed from
the record as to whether or not the hearing was in accordance with
statutory requirements.  Both in the original hearing and in the re-
examination the minutes on this point set forth merely the conclusions
of the boards of special inquiry as to the tests and not the facts upon
which those conclusions were based.  It is also important that the alien
be clearly informed of his or her right to designate the particular lan-
guage or dialect in which he or she desires the examination to be made.

[3] But there is a much more serious defect in this proceeding which
goes to a question of jurisdiction.  Section 17 of the immigration laws,
being Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼ii (noted

in the margin)[1] is cautious to provide an absolute and fair right of appeal so that the exclusion of the alien shall not rest solely upon the determination of a board of special inquiry. In order to carry out the administrative requirements of this section, rule 17, containing various subdivisions, has been promulgated. Subdivision 1 of rule 17 provides:

"Subdivision 1. *Informing Alien as to Right of Appeal.* Where an appeal lies the alien shall be informed of his right thereto, and the fact that he has been so informed shall be entered in the minutes."

Subdivision 9 of the same rule provides:

"Subdivision 9. *Reopening of Cases.* Whenever a case is referred back to a board by the bureau or the department in order that additional evidence may be taken, such case is thereby reopened; and after the new evidence has been taken the board shall render a new decision, in which it may in its discretion reaffirm, alter, or reverse its previous decision. The mere action or referring back a case under such circumstances is not to be taken as an indication of any disapproval by the bureau or the department of the board's decision or of what the new decision should be."

Subdivision 11 of the same rule provides:

"Subdivision 11. *Procedure in Reopened Cases.* The hearing in a case reopened before a board of special inquiry shall be of the same nature and be subject to the same conditions, limitations, and privileges as an original hearing before such a body."

It is plain that both within the intent of the statute and in accordance with the rules made in pursuance thereof, subdivision 11, supra, is here controlling. Subdivision 9 provides for the taking of additional evidence, and thereby the reopening of the case, "because obviously a previous record is incomplete" and then requires the board to render "a new decision" after the "new evidence" has been taken, and it is made clear that the board is not to be controlled in its new decision by the fact that the case is referred back to the board by the bureau or the department. Obviously, it is not the original decision but the new decision which determines whether or not the alien shall be excluded. Such decision is clearly appealable under section 17 of the statute, and, if there were any doubt whatever on that point, subdivision 11 of rule 17, supra, has made the procedure entirely clear.

In the case at bar, the effect of the letter from Assistant Commissioner Landis, based on the bureau letter of September 15, 1922, was to inform the board of special inquiry that no appeal was necessary and that the board's decision would be final. The point upon which Szejwa Waldman was to be examined, and which was to determine whether or not she and her children were to be excluded, was the vital question of her ability to read in conformity with the requirements of section 3 of the statute. If she had been informed of her right to appeal (rule 17, subd. 1), and had she appealed, it would doubtless have been realized by the Bureau at Washington that the ruling laid down in the letter of Assistant Commissioner Landis was contrary to the statute, as pointed out supra, or the bureau might have concluded that the actual test was not properly given. The point is that this relator was

---

[1] See note at end of case.

deprived of the vital protection of appeal which the statute, and the rules have set up to insure a fair hearing for such applicants in accordance with law.

There is a letter attached to the petition for the writ, written by Assistant Secretary of Labor Henning to United States Senator Colt. We must disregard this letter as not being a part of the record, which we have the power to review. But, referring to the letter merely for argumentative purposes, it is interesting to note that the language used by the Assistant Secretary is that the department had directed that the case be reopened "for the purpose of according the woman a re-examination as to her ability to read in Hebrew *or* in Yiddish."

It remains only to state that the record leaves the case of Zenia in a position where it must be assumed that the decision to exclude her was not affirmed by the Department of Labor, and the department may very well have disagreed with the local board as to whether or not the physical defect would interfere with the ability of Zenia to earn a living. The fate of the mother and the three children was placed entirely upon the question as to whether or not she could read Hebrew and Yiddish. While it seems to us that the reading test applied was not in accordance with the statute, we prefer to rest our decision upon the failure to accord to these relators an opportunity to appeal and this failure we regard as a fatal jurisdictional defect which renders the order of deportation void.

In view of the foregoing, it is unnecessary to discuss the contention that the record shows that relators left their last permanent residence because of religious persecution and hence that illiteracy was not a bar under section 3 of the statute.

The order below is reversed, and the District Court is instructed to enter an order sustaining the writ and discharging relators.

### NOTE.

"Section 17. That boards of special inquiry shall be appointed. * * * Each board shall consist of three members. * * * Such boards shall have authority to determine whether an alien who has been duly held shall be allowed to land or shall be deported. * * * Such boards shall keep a complete permanent record of their proceedings and of all such testimony as may be produced before them; and the decisions of any two members of the board shall prevail, but either the alien or any dissenting member of the said board may appeal through the commissioner of immigration at the port of arrival and the Commissioner General of Immigration to the Secretary of Labor, and the taking of such appeal shall operate to stay any action in regard to the final disposal of any alien whose case is so appealed until the receipt by the commissioner of immigration at the port of arrival of such decision which shall be rendered solely upon the evidence adduced before the board of special inquiry. In every case where an alien is excluded from admission into the United States, under any law or treaty now existing or hereafter made, the decision of a board of special inquiry adverse to the admission of such alien shall be final, unless reversed on appeal to the Secretary of Labor. * * *"

### On Petition for Rehearing.

PER CURIAM. Upon this petition for a rehearing submitted by the United States Attorney, attention is called to Chin Yow v. United States, 208 U. S. 8, at page 13, 28 Sup. Ct. 201, 52 L. Ed. 369; Kwock

Jan Fat v. White, 253 U. S. 454, at page 465, 40 Sup. Ct. 566, 64 L. Ed. 1010, and to the recent decision in Ng Fung Ho v. Edward White, 259 U. S. 276, 42 Sup. Ct. 492, 66 L. Ed. 938.

[4]. It is undoubtedly the law, that, generally in a habeas corpus proceeding on behalf of a Chinaman, the Chinaman is entitled to a judicial hearing, if the relator claims admission to the United States as a citizen thereof. In a non-Chinese Immigration case, however, the applicant for admission is not entitled to a judicial hearing, unless perchance (a point which has not arisen) he should claim citizenship. The result is that on appeal in habeas corpus of an admitted alien, such as the relator in the case at bar, we can do no more than examine into the regularity or irregularity of the proceeding. If, as here, we find the proceeding was not in accordance with law, the result is that the relator is discharged from custody.

[5] A determination of this character is not, however, res adjudicata and does not, in any manner, prevent the United States or its appropriate officials from again beginning proceedings against such an alien as this relator. The effect of our decision is merely to discharge the relator from custody because the particular proceeding complained of was not in accordance with law. The order entered upon our mandate will not prevent the beginning of an appropriate proceeding, if the Government is so advised.

For the reasons outlined, the petition for rehearing is denied.