## COMPAGNIE GENERALE TRANS-ATLANTIQUE v. UNITED STATES.

## INTERNATIONAL MERCANTILE MARINE CO. v. SAME.

District Court, S. D. New York.

Dec. 4, 1929.

[1] Decided on memorandum of statement of facts and conclusions of law. No opinion filed.

John M. Lyons, of New York City, Roger O'Donnell, of Washington, D. C., and Joseph P. Nolan, of New York City, for plaintiffs.

Charles H. Tuttle, U. S. Atty., and George B. Schoonmaker, Asst. U. S. Atty., both of New York City, for the United States.

McCORMICK, District Judge.

The above-entitled four actions have been heard simultaneously upon written stipulations of facts on file. Each case is brought under the so-called Tucker Act (28 USCA § 41(20), and is founded upon the same "Law of the United States," to wit, the Immigration Act of 1917 (39 Stat. 874). Inasmuch as these causes involve the same questions of law, one opinion will suffice and may be regarded as having been rendered and filed in each case.

The substantial facts shown by the stipulations may be epitomized as follows: Plaintiffs are transatlantic steamship carriers, and brought eighty aliens to the port of New York as passengers and immigrants seeking admission into the country. At the time there was no quota law in effect, and the applicable immigration law was the said Act of 1917. Upon arrival and upon inspection, seventy-nine of the aliens were found to be within exclusion clauses under section 3 of said act (39 Stat. 875, 8 USCA § 136) only in that they were unable to meet the literacy test ordained by the statute as applied by the immigration authorities at the port of entry. Instead of excluding these aliens and ordering them deported, each was granted temporary admission into the country under bond. Thereupon the Secretary of Labor penalized the plaintiffs $200 for each alien brought over by them respectively, in addition to a sum equal to that paid by the aliens respectively for his transportation from his initial point of departure. The Secretary assumed to so act under authority of section 9 of the said Act of 1917 (39 Stat. 880). The plaintiffs, under protest, paid the fines imposed upon them. Thereafter, pursuant to a decision of the Labor Department, the respective passage moneys were refunded to the steamship company, but return of the rest of the fine, to wit, $200, for each alien, was refused because it had been "covered into the treasury of the United States." These actions were thereafter commenced, and the primary question for decision is whether under the stipulations of fact the fines and penalties were legally imposed under the said Immigration Act of 1917. In other words, the case involves a question as to what proper construction should be given to the ninth proviso of section 3 (39 Stat. 878, 8 USCA § 136(q) of the Immigration Act of 1917 when read contextually with all of the other

terms and provisions of said act in the light of the evidence contained in the stipulations. The government contends that said proviso is merely a procedural rule in the nature of adjective law, and plaintiff maintains that it is more than that, and is substantive law, which reaches and determines this controversy.

The said proviso reads as follows: "Provided further, That the Commissioner General of Immigration with the approval of the Secretary of Labor shall issue rules and prescribe conditions, including exaction of such bonds as may be necessary, to control and regulate the admission and return of otherwise inadmissible aliens applying for temporary admission."

I think it is questionable under the decision of the Second Circuit Court of Appeals, in United States ex rel. Waldman v. Tod, 289 F. 761, whether the record in these cases discloses the necessary evidence to show that any one of the aliens was illiterate and therefore properly subject to exclusion within the terms of the act in question. Regardless of such deficiencies, I am of the opinion that plaintiff has established its right to the return of the respective fines imposed by the immigration authorities.

It has been clearly established by the Supreme Court, in construing immigration laws and measuring the powers of executive and administrative federal authorities thereunder, that Congress may invest the Secretary of Labor with wide discretion in the matter of the admission of aliens into the country who otherwise would be excluded from entering the United States. See Oceanic Navigation Co. v. Stranahan, 214 U. S. 320, 29 S. Ct. 671, 53 L. Ed. 1013.

I believe it clear that such was the purpose of Congress in the ninth proviso supra. To accept and adopt the construction urged by the government would emasculate from the proviso and render nugatory that portion of it that impliedly authorized the immigration authorities to grant temporary admission of otherwise inadmissible aliens who, in the discretion of such officers, show conditions and circumstances that justify temporary admission into the United States. Such construction, being forced, should not be accepted by the court unless necessary in order to give the statute vitality. I do not believe such to be the case in these matters.

There is a vast difference between discretionary power invested in the immigration authorities justifying the temporary admission of aliens who are merely unable to meet a literacy test and the power to admit mentally or physically diseased or disordered persons. The last-mentioned classes have been by Congress absolutely excluded, while the verbiage and context of the ninth proviso confers upon the immigration officials discretion to do the very thing that was done by them in the cases of these seventy-nine aliens. It is clear that, if such right existed and was lawfully exercised by the immigration authorities, then the imposition of fines upon the plaintiffs was unauthorized and illegal under the last proviso of section 9 of the act, which reads as follows: "Provided further, That nothing contained in this section shall be construed to subject transportation companies to a fine for bringing to ports of the United States aliens who are by any of the provisos or exceptions to section three hereof exempted from the excluding provisions of said section."

Section 9 of said act is the one that provides for the imposition of fines upon carriers for bringing aliens to ports of entry in violation of the statute.

I do not believe that under the Immigration Act in force at the time these aliens were permitted to enter, the plaintiffs were required to examine the aliens at the time of their embarkation so as to ascertain whether they met the literacy test under the immigration laws of the United States. I find no support of such contention in the statute under consideration or in any of the immigration laws or regulations in force at the time in question. The present requirements in existing immigration laws were not in force when these aliens were admitted and are not provided for under the act of 1917, or in any other act as far as I have been able to find. I think the language of Circuit Judge Swan, in Compagnie Francaise de Navigation A Vapeur v. Elting, Collector of Customs (C. C. A.) 19 F.(2d) 773, 774, is peculiarly applicable upon this last contention. Judge Swan wrote:

"To hold that the transportation company act at its peril in bringing an alien who claims to be exempt from the quota would be a practical denial to the alien of the privilege of presenting his evidence. No company would bring him on such terms. To hold that the company must investigate the merits of the alien's claim, and is privileged to bring only such aliens as it thinks ought to be admitted, is to make it, rather than the immigration officials, pass upon the alien's claim, which is not the privilege granted the alien by the

regulation. * * * The plaintiff could not have known at the port of embarkation that the alien was inadmissible, for this fact could be established only after a hearing by immigration officials. Diligent inquiry would have disclosed merely the facts which the alien submitted at his hearing, and the sufficiency of those facts had to be passed upon by the immigration officials at such hearing before the alien's admissibility could be ascertained."

My conclusion on this branch of these cases under the agreed facts is that each alien having had the right to come to the port of entry to be examined by the immigration officers there, and, having failed to meet the literacy test, applied by such authorities at the time, it was then discretionary with such immigration authorities to eo instanti exclude the alien and to order him deported or under the ninth proviso of section 3 of the act, supra, to permit the alien to apply for temporary admission into the United States, and, in the judgment of such immigration officers, to grant to the alien temporary admission into the country upon such terms and conditions as by the rules of the immigration service they should exact in carrying out said power conferred by Congress upon them. Under all of these cases, the aliens were granted temporary admission, and, as far as the record shows, all of the aliens are now in the United States under such lawful temporary admission. Under such circumstances, it must be held that the last proviso of section 9, supra, is applicable in all of these cases and clearly shows that the plaintiffs were not subject to fine or penalty for bringing these seventy-nine aliens to ports of the United States because they were all by virtue of the provisos and exemptions of the statute and particularly those in the ninth proviso of section 3 exempt from the excluding provisions of said section. This proviso is not solely a procedural or adjective enactment, but is a substantive part of the statute as well. It lodged in the immigration officials' right to temporarily admit illiterate aliens who were inadmissible permanently solely because they could not meet the literacy test.

I believe that the attitude of the Immigration Service in refunding and remitting the portion of the penalty exacted as passage money is illuminating in these cases, and manifests that the immigration officers did not intend to require the plaintiffs to return the aliens to their points of embarkation, and while, of course, such practical construction is not determinative of the rights of the United States in actions of this kind, nevertheless it is a circumstance that strengthens the conclusions that have been reached herein.

But it is asserted that, admitting that the fines imposed upon plaintiffs in these cases were improperly and illegally collected, no recovery may be had in certain of the cases because of the provisions of section 1 of the Tucker Act, U. S. C. tit. 28, § 41 (20), 28 USCA § 41(20), which reads as follows: "No suit against the Government of the United States shall be allowed under this paragraph unless the same shall have been brought within six years after the right accrued for which the claim is made."

The stipulations of facts show that, in the cases in which the aforesaid statute of limitation is pleaded, the exaction of the fine or penalty and/or the covering of the same into the Treasury of the United States, occurred more than six years prior to the commencement of the actions. But the stipulations further recite and it is also made to appear by the pleadings in the cases that, within the period of six years prior to the commencement of the actions, the officer of the defendant, to wit, the collector of customs, recognizing the invalidity of the fines and penalties, has refunded to plaintiffs the amount withheld as passage money. It seems to me that this latter event tolls the running of the statute in such cases and operates to revive the debt or claim that existed in the plaintiffs against the United States. These refunds of passage money appear to have been voluntarily made, and to my mind clearly evidence an intention on the part of the United States to recognize and refund the balance of the claim or penalty; the payment being clearly intended to be made on an outlawed debt, which is sufficient between the parties to take it out of the statute without any further acknowledgment, from which a new promise may be inferred. See In re Salmon (D. C.) 239 F. 413, affirmed (2d C. C. A.) 249 F. 300.

The penalty or fine in each case consisted of the $200 and the respective passage money. These items constituted in law but one unified, inseparable, and indivisible penalty, notwithstanding the passage money was to be used for the benefit of the alien in the event that he was excluded. None of these aliens were excluded, but, on the contrary, all were given temporary admission into the United States, and, as far as the

record discloses, they are still lawfully within the United States.

I feel that, under the circumstances shown by the agreed facts herein and in view of what I believe to be the law of these cases, plaintiffs have shown their right to the return of the balance of the fines and penalties remaining in the hands of the United States, as to the seventy-nine aliens and it is accordingly ordered that conclusions of law in favor of plaintiffs, respectively, in each of the said four causes, be prepared by the attorneys for plaintiffs respectively, and that judgment be for plaintiffs accordingly herein.